UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-60007-CIV-COHN/SELTZER

JOANNE McCALLA,

    Plaintiff,

vs.

AVMED, INC., a Florida corporation, and
MARIANNE DIVITA, an individual.

    Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Summary Judgment ("Pl.'s Motion") [DE 52] and Defendants' Motion for Summary Judgment [DE 53] (collectively "Motions for Summary Judgment"). The Court has carefully considered the Motions for Summary Judgment, all of the parties' submissions, argument of counsel, and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff Joanne McCalla ("Plaintiff" or "McCalla") worked for Defendant Avmed, Inc. ("Avmed") from October 2006 through December 4, 2009. Defendants' L.R. 5.7 Statement of Undisputed Material Facts ("Defs.' Statement of Facts") ¶¶ 1, 31 [DE 54]; Plaintiff's Response to Defendants' L.R. 5.7 Statement of Undisputed Material Facts ("Pl.'s Opp'n Facts") ¶¶ 1, 31 [DE 67]. Defendant Marianne Divita ("Divita") was Avmed's Director of Human Resources. Defs.' Statement of Facts ¶ 2; Pl.'s Opp'n Facts ¶ 2. On March 17, 2009, McCalla completed an "Employee Request for Family and Medical Leave of Absence" form ("FMLA Request") because she needed time off to

care for her son who was battling cancer. Plaintiff's Statement of Undisputed Material Facts In Support of Her Motion for Summary Judgment ("Pl.'s Statement of Facts") ¶¶ 4, 6 [DE 58]; Defendants' Response to Plaintiff's Statement of Undisputed Material Facts ("Defs.' Opp'n Facts") ¶¶ 4, 6 [DE 62]; Exhibit A (Part 2) to Defendants' Motion for Summary Judgment ("Defs.' Ex. A") at 5-6 [DE 57-1]. On the form, Plaintiff checked off boxes for both "Regular Leave" and "Intermittent Leave" and indicated that her regular leave was to commence March 18, 2009 and conclude March 26, 2009. Defs. Ex. A at 5 [DE 57-1]. By letter dated March 23, 2009, Avmed acknowledged receipt of McCalla's FMLA Request and provided her with copies of its Notice of Eligibility and Rights & Responsibilities, Certification of Health Care Provider form for her son's health care provider to complete, and Avmed's Leave of Absence Policy. Defs. Ex. A at 12-32 [DE 57-1]. The Notice of Eligibility and Rights & Responsibilities advised McCalla that if her leave request qualified as Family Medical Leave Act ("FMLA") leave, she would be required to use her paid vacation time during her FMLA leave. Id. at 14; Affidavit of Marianne Divita In Support of Defendants' Motion for Summary Judgment, Exhibit E to Defendants' Motion for Summary Judgment ("Divita Aff.") ¶ 9 [DE 57-5].

On March 24, 2009, McCalla's son's health care provider completed the required Certification of Health Care Provider form which described the care that McCalla's son required. Certification of Healthcare Provider, Exhibit 7 to Plaintiff's Statement of Undisputed Material Facts in Support of Her Motion for Summary Judgment ("Pl.'s Ex. 7") [DE 58-7]. Thereafter, on March 26, 2009, Avmed approved McCalla's FMLA Request and issued a designation notice. Designation Notice, Exhibit 8 to Plaintiff's Statement of Undisputed Material Facts in Support of Her Motion for Summary

Judgment [DE 58-8]. The designation notice informed Ms. McCalla that "[a]ll leave taken for this reason will be designated as FMLA leave" and reminded her that Avmed policy required her to use paid leave during her FMLA leave. Id. McCalla was on intermittent leave from March 27, 2009 through November 2009. Defs.' Statement of Facts ¶ 12; Pl.'s Opp'n Facts ¶ 12. On December 2, 2009, Divita sent McCalla a letter informing her, that based on Avmed records, she had exhausted her FMLA leave as of November 25, 2009 and that if she did not contact Avmed or return to work, her employment would be terminated, effective December 4, 2009. 12/2/2009 letter, Exhibit 4 to Plaintiff's Statement of Undisputed Material Facts in Support of Her Motion for Summary Judgment [DE 58-4].

After receiving this letter, McCalla contacted Avmed on December 3, 2009 and spoke with Divita and Benefits Coordinator Maypu Sanchez. Defs.' Statement of Facts ¶ 27; Pl.'s Opp'n Facts ¶ 27. During this conversation, McCalla indicated that she would be unable to return to work on December 4th and did not offer any date when she might be able to return to work. Defs.' Statement of Facts ¶ 28; Pl.'s Opp'n Facts ¶ 28; Excerpts from the Deposition of Joanne McCalla, Exhibit A (Part 1) to Defendants' Motion for Summary Judgment ("McCalla Dep.") at 39 [DE 56-1]. On December 7, 2009, on the basis that she had exhausted her FMLA leave and was unable to return to work, Avmed sent McCalla a letter terminating her employment, effective December 4, 2009. Exhibit B to Defendants' Motion for Summary Judgment at 22 [DE 57-2].

McCalla filed suit against Avmed and Divita (collectively "Defendants") on December 16, 2010. In her complaint, McCalla brings claims against Avmed for violation of the Family Medical Leave Act, 29 U.S.C. §2601, and against Divita for

intentional infliction of emotional distress. Defendants removed the action to this Court on January 4, 2011. Plaintiff and Defendants have now filed cross motions for summary judgment.

## II. DISCUSSION

### A. Legal Standards

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must demonstrate a lack of evidence supporting the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

As long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of

evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

### B. Family Medical and Leave Act ("FMLA") Claims

The FMLA provides eligible employees with the right to "12 workweeks of leave during any 12-month period . . . "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(c). The statute further provides that leave taken pursuant to 29 U.S.C. § 2612(a)(1)(c) may be taken intermittently, 29 U.S.C. § 2612(b)(1), and that an employer "may require the employee to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided" under the statute. 29 U.S.C. § 2612(d)(2)(A). Upon expiration of FMLA leave, the employee is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position. 29 U.S.C. § 2614(a)(1).

The FMLA creates two claims for employees who allege that their rights under the statute have been violated: (1) interference claims, whereby an employee asserts that his employer denied or otherwise interfered with his substantive rights under the FMLA and (2) retaliation claims, whereby an employee asserts that his employer discriminated against him because he engaged in activity protected by the FMLA. See O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1352 (11th Cir. 2000) (citing

29 U.S.C. § 2615(a)(1)-(2)).

To state a claim of interference with a substantive right, an employee must demonstrate by a preponderance of the evidence that she was entitled to the benefit denied. See Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206-07 (11th Cir. 2001) (citing O'Connor, 200 F.3d at 1353-54). Alternatively, "to succeed on a retaliation claim, an employee must demonstrate that [her] employer intentionally discriminated against [her] in the form of an adverse employment action for having exercised an FMLA right." See Strickland, 239 F.3d at 1207. Thus, a plaintiff who brings a retaliation claim faces the increased burden of showing that an impermissible retaliatory or discriminatory animus motivated her employer's actions. See id.

### 1. Interference

The heart of McCalla's interference claim against Avmed is that Avmed interfered with her rights under the FMLA because she was terminated prior to exhausting her full 12 weeks of protected leave. Pl.'s Motion at 9. This claim fails, however, because McCalla was terminated after she had taken at least 63 days of FMLA leave and, thus, exhausted her rights under the statute. McCalla and Defendants agree that there are 55 particular days McCalla was out of work that counted towards her FMLA leave entitlement. Defs.' Statement of Facts ¶ 13; Pl.'s Opp'n Facts ¶ 13.[1] The parties dispute whether eight days McCalla was out of work in

---

[1] In her response to Defendants' L.R. 7.5 Statement of Undisputed Material Facts ("Plaintiff's Opposition Facts") [DE 67], McCalla states that "[t]he dates that McCalla acknowledged utilizing FMLA in her deposition, as cited by Defendants were exactly the same days and number of days that Defendants' own records reflect McCalla utilized which amounted to fewer than 60 days." Pl.'s Opp'n Facts ¶ 13. Exhibit

March 2009, three days in September 2009 (when McCalla says she was working, but Avmed said she was mistakenly paid), and two dates in November 2009 count towards McCalla's FMLA leave. Summary judgment should be granted in favor of Defendant Avmed on McCalla's interference claim because the eight March 2009 dates counted towards McCalla's FMLA leave, meaning that McCalla had exhausted her FMLA benefits when she was terminated.[2]

### a. The March Dates Were Properly Classified as FMLA Leave Days

McCalla alleges that the days she was out of work from March 18, 2009 through March 26, 2009 (the "March dates") were Paid Time Off ("PTO") and did not count

---

3 to Plaintiff's Opposition Facts, a time detail from Avmed's payroll system which this paragraph references, has 55 days with the letters "FMLA" in the description. Time Detail, Exhibit 3 to Plaintiff's Statement of Undisputed Material Facts in Support of Her Motion for Summary Judgment [DE 67-3]. Thus, the Court finds that McCalla admits that she took at least 55 days of FMLA leave.

[2] Because the Court finds that the eight March 2009 days were properly counted towards McCalla's FMLA leave and that with inclusion of these days McCalla exceeded her leave entitlement, the Court declines to determine whether Avmed improperly designated the three September dates and two November dates as FMLA leave days. The Court notes, however, that Plaintiff has not presented any evidence that she was working on September 16-18, 2009, other than vague deposition testimony that she must have worked because "it's recorded" she was working on Avmed's payroll records. Excerpts from the Deposition of Joanne McCalla, Exhibit 27 to Plaintiff's Response to Defendants' L.R. 7.5 Statement of Undisputed Material Facts ("McCalla Dep.") at 19 [DE 67-27]. The affidavit of Marianne Divita, which asserts that McCalla was not working on those dates because 1) Avmed's IT system reflected no computer activity for McCalla and 2) McCalla did not submit any mileage reimbursement forms, is uncontroverted. Divita Aff. ¶¶ 4-5.

McCalla's claim that November 26th and 27th should not have counted towards her FMLA leave because they were company holidays is doubtful. At least one Court of Appeals has held that "if an employee's intermittent leave includes a full, holiday-containing week, section 825.200[h] provides that the 'amount of leave used' includes the holiday." Mellen v. Boston Univ., 504 F.3d 21, 25 (1st Cir. 2007).

towards her FMLA leave. Pl.'s Motion at 10. McCalla's argument that the March dates did not count towards her FMLA leave distorts the statute's plain meaning. Under the FMLA, an employer may require an employee to substitute paid leave for any part of the 12-week FMLA entitlement. 29 U.S.C. § 2612(d)(2)(A). Thus, paid leave may "run concurrently with the unpaid FMLA leave." 29 C.F.R. § 825.207(a); Strickland, 239 F.3d at 1205. The Eleventh Circuit has explained that "[t]he logical purpose underlying the substitution language in the FMLA and accompanying regulations is to protect employers who offer paid sick leave benefits to their employees from having to provide both the statutory 12 weeks of leave required by the FMLA and the paid leave benefit separately." Strickland, 239 F.3d at 1205-06.

The record establishes that Avmed's leave policy required employees to take paid time off concurrently with FMLA leave. Affidavit of Maypu Sanchez, Exhibit I In Support of Defendants' Response to Plaintiff's Statement of Undisputed Material Facts ("Sanchez Aff.") ¶¶ 5-6 [DE 64-10]. McCalla was provided with no less than four separate documents disclosing this policy. First, the Employee Request for Family and Medical Leave of Absence form ("FMLA Request"), which McCalla submitted on March 17, 2009, discloses that she "would be required to substitute accrued paid leave, including EIB (if applicable) and PTO." Exhibit A (Part 2) to Defendants' Motion for Summary Judgment ("Defs.' Ex. A") at 6 [DE 57-1]. Second, the Avmed leave policy, sent to McCalla on March 23, 2009 [Defs.' Ex. A at 12] states that: "In cases where the employee has EIB or PTO, the paid time will run *concurrently* with the leave of absence. . . . The employee must use all available EIB and PTO benefits before being placed on unpaid leave status . . . However, . . . *the entire leave period, whether paid or unpaid*

8

*will be counted towards the leave duration.*" Defs.' Ex. A at 29 (emphasis added).

Third, the Notice of Eligibility and Rights, also sent to McCalla on March 23, 2009, notes that she would be required to use her "available paid . . . vacation . . . leave during [her] FMLA absence." Id. at 14. Fourth, the Designation Notice which officially approved McCalla's FMLA request, informs McCalla that "we are requiring you to substitute or use paid leave during your FMLA leave." Id. at 35. Finally, at her deposition, McCalla admitted that she was aware of Avmed's leave policy. See McCalla Dep. at 7 [DE 56-1] (Q. "After reading that documentation, did you learn that while you're on FMLA if you have any paid time off you have to exhaust your PTO, and it runs at the same time that FMLA runs?" A. "I'm aware of that."). Thus, it is undisputed that McCalla was aware of Avmed's policy which required her to take PTO concurrently with FMLA leave.

Given McCalla's knowledge of Avmed's leave policy, it is also undisputed that her FMLA leave actually commenced on March 18, 2009 — the first day McCalla was out of work for an FMLA purpose, i.e. caring for her ill son. See Bloom v. Metro Heart Group of St. Louis, Inc., 440 F.3d 1025, 1031 (8th Cir. 2006) (holding that plaintiff's FMLA leave started on the date she qualified for a serious health condition and that substitution of paid leave did not entitle her to additional leave). McCalla's FMLA Request asked for both regular leave from March 18-26, 2009 and intermittent leave. Defs.' Ex. A at 5 [DE 57-1]. The Designation Notice Avmed sent to McCalla informed her that her leave request, as embodied by the FMLA Request form she completed, was approved and that "[a]ll leave taken for this reason will be designated as FMLA leave." Id. Because McCalla admits that she was out of the office caring for her son as

9

of March 18, 2009, all leave she requested was for an FMLA purpose and counted towards her FMLA entitlement. See McCalla Dep. at 3 [DE 56-1] (Q. "[A]s of March 18, 2009 you were out for reasons related to your son's illness, correct?" A. "Correct").

Additionally, both Avmed's leave policy and FMLA regulations expressly contemplate that approval of FMLA leave may occur after an employee has gone out on leave. Avmed's leave policy provides that "[i]t will be the employee's responsibility to return both the Certification of Healthcare provider as well as the Request for Leave of Absence Form to Human Resources *within 15 days of the first day of leave*. A delay in the return of the required documents and certification can result in the leave being denied or postponed." Defs.' Ex. A at 27 [DE 57-1] (emphasis added). The FMLA regulations similarly provide that the leave designation may occur after leave has commenced because the employer may require additional information "to determine whether the leave is being taken for a FMLA-qualifying reason (e.g., after receiving a certification)." 29 C.F.R. § 825.300(d). Here, in accordance with Avmed policy and FMLA regulations, McCalla's FMLA request was approved after her son's healthcare provider completed the requested Certification. See Pl.'s Ex. 7.

**b. Avmed did not retroactively "reclassify" the March Dates**

McCalla further argues that "Defendants decided on November 30, 2009 to 'reclassify' the days off that McCalla had from March 18-29, 2009 as FMLA, without telling or informing McCalla that they were doing such reclassification, so they could then take the position that McCalla's leave was about to expire, when it really was not." Pl.'s Motion at 10. McCalla's argument that Avmed retroactively "reclassified" her leave to commence on March 18, 2009 is also without merit. Avmed never reclassified

the March dates as FMLA leave. Instead, as explained above, McCalla requested and Avmed approved McCalla's FMLA leave, effective March 18, 2009. Title 29 C.F.R. §825. 301(d) requires additional notification to the employee to retroactively designate FMLA leave only "[i]f an employer does not designate leave as required by § 825.300." 29 C.F.R. § 825.301(d). Here, Avmed followed the requirements of 29 C.F.R. § 825.300 when it provided a designation notice to McCalla which informed her that her "leave w[ould] be designated and w[ould] be counted as FMLA leave." 29 C.F.R. § 825.300(d); see Defs.' Ex. A at 35 [DE 57-1]. Avmed "could not retroactively change leave that was previously designated as non-FMLA leave," as Plaintiff contends, when it had not yet determined whether to approve McCalla's FMLA leave request. See Pl.'s Motion at 10-11.

McCalla's argument that Avmed reclassified her leave because Avmed's payroll system, Kronos, listed the leave as PTO, is similarly unpersuasive. Avmed classified the March dates as PTO in its payroll system, Kronos, for pay purposes only because McCalla's FMLA leave had yet to be approved. Sanchez Aff. ¶¶ 7, 12; Affidavit of Marianne Divita in Response to Plaintiff's Motion for Summary Judgment and Statement of Undisputed Facts ("Second Divita Aff.") ¶¶ 7, 12 [DE 64-9]. As explained in the Divita and Sanchez affidavits, Avmed does not have any business purpose to update Kronos once FMLA leave is approved because Avmed uses its "HR IS" system, not Kronos, to track FMLA leave. Sanchez Aff. ¶ 7; Second Divita Aff. ¶ 11. Thus, any designation of the March dates as PTO in Kronos had no effect on whether McCalla's leave was counted towards her FMLA leave entitlement.

**c. Avmed did not fail to disclose McCalla's rights under the Statute**

McCalla also claims that Avmed's failure to disclose her rights under the FMLA constituted interference. Pl.'s Motion at 10. McCalla asserts that she was told that she could track which days counted towards her FMLA entitlement by looking at her pay stubs and that, based on the notations on her pay stubs, Avmed led her to believe that May 18-26, 2009 were PTO days and did not count towards her FMLA entitlement. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 4 [DE 68]. Other than her testimony that she relied on her pay stubs to track her FMLA leave, McCalla does not provide any support for her position that FMLA leave days could be tracked via pay stubs. McCalla Dep. at 11 [DE 56-1] (Q. "And when you say your records, what records are you referring to?" A. "My pay stubs, number of hours, as well as the Kronos cards that was provided.") McCalla has identified no one at Avmed who told her she could track her FMLA days via pay stubs. By contrast, Avmed provided two uncontroverted affidavits which both state that FMLA leave cannot be tracked via pay stubs.[3] Second Divita Aff. ¶ 10; Sanchez Aff. ¶ 10. McCalla's deposition testimony alone, is not "significantly probative," Celotex Corp., 477 U.S. at 327, as to whether Avmed misled McCalla about the number of FMLA days she had remaining.[4]

---

[3] Although Marianne Divita testified at her deposition that she believed Avmed's pay stubs reflect FMLA leave days taken, she confirmed after her deposition that this was not the case. Second Divita Aff. ¶ 10.

[4] Numerous courts have held that the absence of notice to the employee about what dates constitute FMLA leave in and of itself is not a violation of the FMLA where, as here, an employee actually receives her full 12 weeks of FMLA leave and is unprepared to return to work after her leave has expired. See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 96 (2002) (holding that employer's failure to give employee notice that her leave constituted FMLA leave was inconsequential when

Additionally, although McCalla asserts that Avmed should have told her which days were FMLA leave and which were not, FMLA regulations make clear that the burden is on an employee to request this information when the employee, like McCalla, is on intermittent leave:

> If it is not possible to provide the hours, days, or weeks that will be counted against the employee's FMLA leave entitlement (such as in the case of unforeseeable intermittent leave), then the employer must provide notice of the amount of leave counted against the employee's FMLA leave entitlement *upon the request by the employee*, but no more than once in a 30-day period.

29 C.F.R. § 825.300(d)(6) (emphasis added). McCalla has not put forth any evidence that she requested information about the number of FMLA days she had available, other than her non-specific deposition assertion that she called Maypu Sanchez at some undisclosed date and time and was assured that she had "enough days."

---

plaintiff was afforded 42 rather than 12 weeks of leave); Katekovich v. Team Rent a Car of Pittsburgh, Inc., 36 Fed. Appx. 688, 691 (3rd Cir. 2002) (finding that there was no violation of the FMLA notice requirement where the employee presented no evidence that she could return to work within 12 weeks); Miller v. Personal-Touch of Va., Inc., 342 F. Supp. 2d 499, 514 (E.D. Va. 2004) (finding that although the plaintiff disputed defendant's leave calculations, summary judgment was proper for the defendant where plaintiff was given notice of her right to return to work and chose not to return because she was medically unable to do so); Donahoo v. Master Data Ctr., 282 F. Supp. 2d 540, 555 (E.D. Mich. 2003) (granting summary judgment for employer because employee could not demonstrate any tangible prejudice from her employer's failure to designate her leave as FMLA leave).  Here, McCalla's own deposition testimony is clear that she was unable to return to work on December 4, 2009 as Avmed requested and, because of the nature of her son's illness, she was unable to identify any date when she would be able to return to work. McCalla Dep. at 39 [DE 56-1]. In fact, McCalla testified that the earliest she would have been able to return to work was "sometime after the 19th," after her son's funeral had taken place. Id. at 43. December 19th is beyond her 12 week FMLA entitlement even under McCalla's more generous calculation of her FMLA start date.

McCalla Dep. at 33 [DE 67-27].[5] Thus, McCalla has failed to establish that she requested an accounting from Avmed about the number of days which counted towards her FMLA entitlement or that such a request was denied or misleading.

Finally, McCalla's argument that Avmed interfered with her rights under the statute because it failed to inform her about its non-FMLA leave policy is also unpersuasive. See Pl.'s Motion at 9. Undisputedly, McCalla was provided with a copy of Avmed's leave policy on March 23, 2009. Defs.' Ex. A at 12-32 [DE 57-1]. By the very terms of this policy, the onus was on McCalla to request additional leave. Specifically, the policy provides that:

- An employee desiring a personal leave must give notice;
- A written request for personal leave must be submitted to the company; and
- Approval "may be granted." Id. at 23.

Thus, additional leave is not automatic and the burden is on the employee to request the additional leave. As, McCalla correctly observes in her Motion for Summary Judgment, "[a]n employer must observe any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established by the FMLA." Pl.'s Motion at 9 (citing 29 C.F.R. §825.700(a)). However, McCalla has presented no evidence that she ever requested additional leave or that her request was denied. Accordingly, Avmed comported with FMLA regulations when it provided

---

[5] Even if Maypu Sanchez, a benefits/human resources specialist for Avmed had told McCalla that she had plenty of days remaining on her FMLA leave, this would still not necessarily entitle McCalla to additional leave. See Miller, 342 F. Supp. 2d at 510 (noting that reliance on representations from defendant's employees about the number of leave days remaining did not entitle the plaintiff to additional leave beyond 12 week FMLA entitlement).

McCalla with a copy of its leave policy after McCalla had requested FMLA leave. The FMLA requires nothing else. See Miller, 342 F. Supp. 2d at 512 ("to the extent that plaintiff relies on [her employer's internal leave] policy as the source of the alleged requirement, violation of an employer's internal policy does not support a statutory FMLA violation.")

### 2. Retaliation

In Count I of her Amended Complaint, McCalla asserts that (1) Avmed's termination of McCalla before her FMLA leave expired and (2) Avmed's fight against McCalla's right to unemployment compensation constitutes retaliation under the statute. Amended Complaint ¶¶ 33, 35 [DE 48]. Absent direct evidence of the employer's intent, retaliation claims are analyzed under the Title VII burden-shifting retaliation standard. Strickland, 239 F.3d at 1207.[6] To state a claim of retaliation based on indirect or circumstantial evidence, an employee must allege that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. Id. (citing Parris v. Miami Herald Publ'g Co., 216 F.3d 1298, 1301 (11th Cir. 2000)). Like the plaintiff in Strickland, McCalla cannot establish that her termination was causally related to the protected activity merely because she was terminated close to the time her FMLA leave

---

[6] McCalla urges the Court to disregard this Title VII burden shifting approach because "[s]ince McCalla was fired while she was actually out on FMLA leave, . . . the applicable prima facie case is the one that applies to interference claims." Pl.'s Motion at 11. The Court finds McCalla's argument unpersuasive. The law is clear that when there is no direct evidence of an employer's discriminatory intent, the Title VII burden shifting approach applies. Strickland, 239 F.3d at 1207. Because McCalla has identified no direct evidence of Avmed's discriminatory intent, the Title VII burden shifting analysis applies.

expired. See id. at 1208 n.10 (noting that "close proximity in time between the protected activity and the adverse employment decision does not, standing alone, establish the third element of a prima facie case.") Because McCalla no longer had any protected rights under the act once her 12-weeks of FMLA leave had expired and was unable to return to work at this time, Avmed did not retaliate against her by terminating her employment as of December 4, 2009. See Johnson v. Morehouse College, Inc., 199 F. Supp. 2d 1345, 1360-61 (N.D. Ga. 2002) ("Obviously, as long as the employee has been given the requisite leave period under the FMLA, the FMLA does not forbid an employer from firing an employee who simply refuses to come back to work, as did this plaintiff. Thus, by firing plaintiff, defendant did not discharge her for opposing any practice made unlawful by the FMLA. . . . [T]he FMLA provides no protection for such recalcitrance.")

Even assuming arguendo that McCalla has made out a prima facie case of retaliation, Avmed has proffered a legitimate, non-discriminatory reason for her termination–namely that McCalla had exhausted her FMLA leave and was unable to return to work due to her son's health condition. Austin v. Fuel Sys., LLC, 379 F. Supp. 2d 884, 903 (W.D. Mich. 2004) (holding that an employer did not retaliate against an employee because one who exceeds the permitted FMLA leave time has no right to be restored to her job). As discussed above, the Court rejects McCalla's argument that Avmed retroactively reclassified her FMLA leave without notice to McCalla. Thus, because McCalla has not presented any evidence that Avmed's reason for firing

McCalla was a pretext, she has not made out a FMLA retaliation claim.[7]

Additionally, McCalla cannot establish that Avmed's actions regarding her unemployment compensation claim constitutes retaliation under the FMLA.[8] McCalla alleges that Avmed interfered with her right to unemployment compensation by falsely claiming that McCalla had quit her job. Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 14 [DE 55]. Because unemployment compensation is not a right guaranteed under the FMLA, Avmed cannot be held accountable for any alleged interference with McCalla's unemployment compensation. Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1298 n.16 (11th Cir. 2006) ("We have held that one cannot bring an FMLA retaliation claim based on an attempt to exercise a right that is not provided by [the] FMLA, such as "the right to leave before one becomes eligible therefor.") (internal quotations and citations omitted).[9]

### C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

McCalla's claim against Divita for intentional infliction of emotional distress also

---

[7] Even if Avmed had miscalculated the dates for McCalla's FMLA leave, an interference claim, not a retaliation claim would be the proper remedy. See Johnson, 199 F. Supp. 2d at 1361 ("Such an employer is not subject to the 'retaliation' prohibitions of the statute by virtue of his miscalculation, alone.")

[8] The Court notes that McCalla did not raise the unemployment compensation retaliation in her own motion for summary judgment. See Pl.'s Motion. The Court addresses this claim, however, because it is raised in Defendants' cross-motion for summary judgment and is alleged in Plaintiff's Amended Complaint.

[9] Indeed, the Court finds that Avmed did not interfere with McCalla's right to unemployment compensation at all, when Avmed truthfully reported to the Agency for Workforce Innovation that McCalla "voluntarily quit" because of "family reasons." Divita Aff. ¶ 15 & Attachment 1. On the contrary, Avmed did not attend McCalla's unemployment compensation hearing "to ensure that Plaintiff did not face any opposition on her appeal and could obtain unemployment benefits." Id. ¶ 16.

fails.[10] To establish a claim for intentional infliction of emotional distress under Florida law, a plaintiff must establish:(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe. Liberty Mut. Ins. Co. v. Steadman, 968 So.2d 592, 594 (Fla. Dist. Ct. App. 2007) (citing Dependable Life Ins. Co. v. Harris, 510 So.2d 985, 986 (Fla. Dist. Ct. App. 1987)). Intentional infliction of emotional distress claims require behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Id. (internal citations and quotations omitted). Courts evaluate conduct objectively "to determine whether it is atrocious, and utterly intolerable in a civilized community." Id. at 595 (internal citations and quotations omitted). Because "[w]hether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact," it is appropriate to resolve an intentional infliction of emotional distress claim on summary judgment. Id. (citations omitted).

Here, summary judgment must be granted in favor of Divita because McCalla attributes *zero* conduct to Divita that could even remotely be construed as extreme and outrageous. McCalla admits that, apart from one telephone conversation where Divita was "respectful" as they discussed whether McCalla could return to work, she did not have any interaction with Divita. Pl.'s Opp'n Facts ¶ 30; Defs.' Ex. A at 51 [DE 56-1]. Thus, McCalla's sole argument that Divita's conduct was extreme and outrageous is that

---

[10] Because the Court has granted summary judgment to Defendants on all of Plaintiff's claims, Plaintiff's motion for summary judgment on Defendants' third, sixth, twelfth, and twenty-fifth affirmative defenses is rendered moot.

she fired McCalla before her FMLA leave had expired. Pl.'s Motion at 18. Although McCalla was surely distressed to lose her job at the same time her son's condition deteriorated, an objective examination of McCalla's termination hardly classifies as extreme and outrageous. In fact, the FMLA, unlike state tort law, is designed to redress exactly the conduct that McCalla complains of. See Williams v. Worldwide Flight SVCS., Inc., 877 So.2d 869, 870 (Fla. Dist. Ct. App. 2004) (finding that no extreme and outrageous conduct existed where, among other things, employee was repeatedly called racially explicit names and was falsely accused of stealing and observing that plaintiff could have pursued relief under state or federal discrimination laws). Because McCalla cannot establish her intentional infliction of emotional distress claim as a matter of law, summary judgment is granted to Defendant Divita.

### III. CONCLUSION

While the Court recognizes the great tragedy that Ms. McCalla and her family endured, the Court must objectively apply the law to the facts of the case. Here, because the facts unambiguously establish that Ms. McCalla's rights under the FMLA were not violated and Divita's conduct was not extreme and outrageous, summary judgment must be granted in favor of Avmed and Divita on all McCalla's claims.

In light of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment [DE 52] is **DENIED**; and

2. Defendants' Motion for Summary Judgment [DE 53] is **GRANTED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 6th day of September, 2011.

JAMES I. COHN
United States District Judge